Darren M. Richie, Esq. (SBN 316116)
Darren@drelaw.com
**DRE, A.P.C.**
222 North Canon Drive, Suite 201
Beverly Hills, CA 90210
Tel: (213) 265-7888 | Fax: (844) 314-1380

*Attorneys for Plaintiff*, Steven Jacobs

# IN THE UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF ARIZONA

| | |
|---|---|
| STEVEN B. JACOBS, a natural person,<br><br>Plaintiff,<br><br>vs.<br><br>OSCAR B. JONES and TRIANNA S. BEGUM,<br>natural persons and husband and wife,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**Claims for Relief:**<br>1. **Defamation**<br>2. **False Light Invasion of Privacy**<br>3. **Tortious Interference with Contract** |

Plaintiff Steven B. Jacobs ("Plaintiff" or "Jacobs") submits this Complaint against defendants Oscar B. Jones ("Jones") and Trianna S. Begum ("Begum"; together with Jones, "Defendants"), and alleges upon personal knowledge and upon information and belief as follows:

## INTRODUCTION

1. This case stems from a purported unpaid gambling debt. Jones claims to be the rightful creditor and characterizes Jacobs as the debtor. As a dispute ensued, Jones, realizing he lacked sufficient merit to properly stake a claim to that interest, resorted to leveraging highfalutin close contacts and encouraging muscle men to enforce his position against Plaintiff.

2. We got here due to Jones' penchant for engaging in egregious defamation *per se*, invasion of privacy, and interference with existing economic interests, pursuant to which Defendant Jones has made dozens of dangerous false and malicious statements about Plaintiff for far too long.

3. Jones' unlawful behavior continues to promote extreme hostility and incite violence,

1  both of which Plaintiff has already unfortunately experienced.

2      4.    Jones' unlawful behavior has recently escalated sharply with no sign of letting up.

3      5.    Jones' statements are in furtherance of a private vendetta and campaign of vile harassment and a violent life-threatening attack by goons incited by his unlawful behavior.

    6.    Jones' unlawful behavior is now coming to a very scary crescendo, in which he has sought to extort money from Jacobs (and even Jacobs' elderly mother[1]) for the benefit of Jones and his marital community. Jones' campaign of harassment includes, but is not limited to: (i) filing three separate lawsuits based on the same allegations; (ii) threatening further lawsuit against Jacobs and his elderly, non-party mother; (iii) conspiring to send a man to attack Plaintiff outside his home to assault, batter, and threaten to kill Plaintiff; (iv) making dozens of false and extremely malicious statements about Jacobs on social media (supported by AI-generated or AI-altered content); (v) calling and texting Plaintiff's supervisor at Plaintiff's law firm in Arizona, pretending to be a "law student", and demanding that Plaintiff be fired based upon Jones' false allegations; and (vi) attempting to extort Plaintiff's mother, Linda Jacobs ("Linda") through threatening emails and nearly a dozen extremely malicious social media posts. Notably, Jones has never met Linda and, aside from his unanswered emails trying to extort money from her, has never had any communication with her whatsoever.

    7.    The subject-matter of Jones' false statements include but are not limited to (i) falsely stating that Plaintiff has admitted in court to stealing approximately $400,000 from Jones; and (ii) falsely stating that Plaintiff, as a professional litigator, has a history of frivolous litigation.

    8.    All of Jones' conduct has been extraordinarily malicious. For example, he supported many of his false statements by creating and disseminating a doctored video of an oral argument in which Jacobs represented himself *pro se*. The video was deceptively edited by Jones (in violation of court rules) to portray Jacobs in a false light, and in as negative a manner as possible.

    9.    Jones has also created multiple AI-generated videos of Jacobs, to falsely depict him as the subject to an FBI investigation, or the subject of an FBI arrest.

---

[1] Attached hereto as Exhibit E is a letter asserting rights that Plaintiff's seventy-four year old mother—an absolute stand up in her community with a dedicated career as a cancer researcher and clinician who cared for countless patients over 40+ years—was required to send to assert and protect her rights.

10. One such video showed purported law enforcement officers chasing Plaintiff, shown in a business suit carrying a briefcase, and knocking him to the ground to effectuate a strong-arm arrest.  This is a clear malicious campaign of defamation and harassment.

11. Plaintiff has never been arrested in his life.

## THE PARTIES AND JURISDICTION

12. Plaintiff is a resident of Maricopa County, and is employed by a business in Maricopa County, in the State of Arizona.

13. Plaintiff is an attorney with approximately thirteen years of litigation experience, licensed to practice and in good standing in the State of New York.  Plaintiff has an application pending to become a member of the State Bar of Arizona.

14. Jones and Begum are husband and wife, and, upon information and belief, are residents of the State of Nevada.

15. Jones perpetrated the misconduct set forth in this Complaint with the intent to benefit the marital community of Defendants Jones and Begum.  Begum is a named defendant in this Complaint so that Jacobs may enforce any forthcoming judgment in his favor against the marital community of Jones and Begum.

16. As set forth more fully below, personal jurisdiction over Defendants is proper in Arizona.  Jones expressly aimed false, defamatory, and malicious statements at Plaintiff knowing Plaintiff resides and is employed in Arizona, with the intent and effect of causing reputational and economic harm in this State.  Indeed, Jones also expressly interfered with Plaintiff's employment in Arizona.

17. As set forth above and below,
   a) Jones called Jacobs' supervisor in Arizona (under false pretenses), and made defamatory statements to attempt to have Jacobs terminated from Arizona employment.  Jones followed up this call with multiple defamatory texts.
   b) Jones has "doxxed" Jacobs by publicly posting his work address and private home address in Arizona (likely in hopes of inspiring his followers to further harass Jacobs at home and at work)

  c) Jones or Jones' agent also entered Arizona to take a picture of Plaintiff in public (without Plaintiff's knowledge or authorization) with the express aim of harassing and intimidating Plaintiff in Arizona.

  d) On May 21, 2025 Jones posted a document showing Plaintiff's private address in Arizona, with intent to damage Plaintiff in Arizona.

  e) On June 12, 2025, Jones posted the picture of Plaintiff in public in Arizona on social media platform "X", with intent to harass Plaintiff in Arizona.

  f) On August 22, 2025, Jones posted Plaintiff's business address in Arizona. That same day, Jones called Plaintiff's employer as described above.

  g) All of Jones' X statements were disseminated in Arizona, and Jones has more than one "follower" on X (at minimum) who are residents in Arizona.

  h) Jones even tagged the State Bar of Arizona in one of his defamatory posts.

18. In sum, Jones' many malicious social media posts have specifically targeted Plaintiff in Arizona where he lives and works.

19. Jones has known at all relevant times that Plaintiff lives and works in Arizona.

20. Upon information and belief, Jones has known at all relevant times that Plaintiff is seeking admission to the Arizona bar.

21. Subject Matter Jurisdiction is proper in this Court as Plaintiff is a resident of Arizona, Defendants are residents of Nevada, and the matter in controversy far exceeds the sum or value of $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332.

22. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to the claims (including harm to Plaintiff's reputation and employment) occurred in this District."

### FACTUAL BACKGROUND

**A. Background of Jones' Harassment**

23. In 2023, Jones filed a complaint against Jacobs in New York County Supreme Court alleging Jacobs owed Jones a debt related to private sports gambling activity ("*Jones I*").

24. Jones' allegations were purely personal in nature, Jones was never a client of

1  Jacobs, and Jones' alleged gambling activities with Jacobs (set forth in the *Jones I* complaint) were
2  unrelated to Plaintiff's legal practice or any client representation.

3        25.    To date, Jones has filed three lawsuits in New York against Plaintiff containing
4  identical allegations ("*Jones I*", "*Jones II*" and *"Jones III"*, respectively). Jones unilaterally
5  withdrew *Jones I* and *Jones II* voluntarily, after litigating for years, so that he could endlessly
6  harass Plaintiff in the courts with new lawsuits (now *Jones III*).

7        26.    In addition, to Jones' harassing litigation activities, he has harassed Plaintiff in a
8  number of other ways since early 2023.

9        27.    *First*, Jones located Linda's work email address at the University of
10  Pennsylvania—a woman who he never met and had no relationship with whatsoever—and sent
11  her a series of harassing and extorting emails.

12        28.    *Second*, Jones and several others conspired to send a masked man to assault, batter,
13  and threaten to kill Plaintiff on the streets of New York.

14        29.    *Third*, Jones has posted dozens of false, malicious, highly inflammatory and even
15  highly dangerous statements about Plaintiff on X. Jones also called and texted Plaintiff's
16  supervisor at his employer in Arizona, repeating similar defamatory statements. These statements
17  are the subject of this action.

18        30.    Jones' false and malicious statements about Plaintiff have fallen largely into two
19  categories: (i) statements that Plaintiff committed theft or fraud, or otherwise stole money from
20  Jones and *admitted* to such theft in a recorded oral argument; and (ii) statements that Plaintiff has
21  engaged in frivolous litigation activities.

22        31.    Jacobs has never been arrested, charged with, or convicted of "theft", "stealing",
23  "fraud", or any other crime whatsoever.

24        32.    Jones knows that Jacobs has never been arrested, charged with, or convicted of
25  "theft", "stealing", "fraud", or any other crime whatsoever.

26        33.    Jones—a legally sophisticated software engineer and professional gambler who has
27  commenced multiple lawsuits *pro se*—knows or should know that Jacobs has never engaged in
28  any litigation activity found to be frivolous by any court in nearly thirteen years of work as a

litigator. Indeed, no adversary (except Jones) has ever even suggested that Jacobs engaged in frivolous conduct.

### B. Jones' States Falsely That Plaintiff Admitted to Theft in Court, Supports Claim with Doctored Video

34. The most pernicious of Jones' many malicious statements are his false claims that Plaintiff admitted to theft in an appellate oral argument from *Jones I*. Jones has publicly and privately "supported" this claim by circulating a deceptively edited video of the oral argument that he created by splicing together (and tactically omitting) certain portions of the actual oral argument which was posted by the court on YouTube (the "Doctored Video").

35. The argument in question—which took place on January 8, 2025—was on a motion to dismiss Jones' complaint, thereby *requiring* Jacobs to accept Jones' allegations as true *solely* for the purposes of the motion.

36. Jacobs' motion to dismiss argued *inter alia* that, *even* accepting all of Jones' scurrilous allegations as true—as required in a motion to dismiss—the case should be released based on a written release executed by the parties.

37. Attached hereto as Exhibit A is a rough transcript of the oral argument at issue.[2]

38. Attached hereto as Exhibit B is a rough transcript of the Doctored video.

39. Attached hereto as Exhibit C is a comparison between transcript of the oral argument and the doctored video, showing the changes made by Jones, which he falsely portrays as reality in his social media posts referenced below, and in correspondence with Plaintiff's employer and family.

40. After the oral argument, Jones made a number of social media posts about Plaintiff. Screenshots of all posts cited below are attached hereto as Exhibit D.

41. On January 27, 2025, Jones' "partner" in his professional gambling "career," Gadoon "Spanky" Kyrollos, posted the Doctored Video which, upon information and belief, was

---

[2] After the Appellate Division issued its ruling denying Jacobs' motion to dismiss, Jones tactically withdrew *Jones I* to avoid remand before a trial judge he believed was unfavorable, thereby nullifying the precise oral argument and order that he has posted endlessly about on social media. Jones' tactical withdrawal of the case precluded Jacobs from seeking appellate remedies.

created by Jones.

42. Jones responded: "@FBI @JusticeOIG @SDNYnews #ArrestStevenJacobsNow; please take 5 minutes out of your day to watch what 5 NY appeals court judges had to say about this @NYSBA-licensed attorney openly admitting to a half-million fraud."

43. Jones purported to support this statement with the Doctored Video, which, as Jones well knows, is an entirely inaccurate portrayal of the argument in question which Jones created to intentionally malign Jacobs and portray him in a false light.

44. In that same thread, Jones later posted: Hey @Socrates1848652 do you have any personal knowledge about this #LegalFraud @NYSBA-licensed attorney-criminal Steven Jacobs that you can share with our fine friends in blue @FBI @JusticeOIG @SDNYnews @NYPDnews @NYPDDetectives #GrandLarcenyDivision??"

45. Upon information and belief, "Socrates1848652" is a mutual acquaintance of the parties named Gaston de la Torre who lives in Arizona.

46. Two days later, on January 29, 2025, Jones posted a link to the Doctored Video, with the following comment: "In which Steven . . . Jacobs admits to defrauding his co-fiduciary for hundreds of thousands of dollars . . . ."

47. Jones' outrageous conduct did not wane with time. On July 16, 2025, Jones posted the following: "Same reason Steven B. Jacobs . . . is still licensed to practice law in New York (cc: @NYSBA) despite admitting in court to stealing ~$400k from me in a fraud scheme . . . ."

48. When a follower of Jones' asked him whether he checked with his brother, a partner at an international law firm, on the "laws surrounding defamation per se," Jones responded: truth is an Absolute Defense to Defamation."

49. Incredibly, in the exact post where Jones cites to "truth" as a defense to defamation, he links to the Doctored Video, which he *knows* that he deceptively edited for the express purpose of injuring Jacobs' reputation and portraying Jacobs in a false light.

50. After receiving notice of this impending lawsuit from the undersigned, Jones did not stop his malicious campaign of defamation.

51. For example, on August 3, 2025, Jones posted "[s]o grateful that I live in America,

where we have strong legal protections re: publishing facts . . . such as the Fact that @StevenBJacobs (Steven Jacobs, middle name Benjamin . . .) is a CRIMINAL FRAUD who COMMITED FELONY THEFT . . . ."

52. On August 12, 2025 Jones posted "the criminal fraud named Steven Benjamin Jacobs who not only committed fraud, but also admitted it [in] front of the New York State Appellate Division 1st Department during oral argument . . . ."

53. On August 13, 2025, Jones posted "Scammin' Steven Jacobs [] ADMITTED in OPEN COURT to being a scam-artist A.K.A. lying to a fiduciary, yet is inexplicably still licensed by the @NYSBA to practice law."

54. On August 21, 2025 Jones posted "Steven Jacobs . . . would rather succeed by fraud than do anything with honor. He would steal a nickel from his grandma if he thought she wouldn't find out. Fortunately for society and justice writ large, he is finally failing badly [because] of his many frauds."

55. The next day, on August 22, 2025, Jones posted "[j]ust learned that the NY Attorney Greivance Committee lost or never-received report I thought I'd filed on Steven Jacobs in January. Bizarre, but I am now in the process of correcting the records and [Jacobs'] days [at Jacobs' employer] & 'No record of discipline' are numbered." Jones' posts included a screenshot of Jacobs' New York attorney information, including his registration number and his employer's name and address.

56. Later that day, Jones posted "Steven B Jacobs . . . is definitely in 'Catch me if you can' mode. His days as a practicing attorney at [Jacobs' employer] are certainly numbered; probably in the low single digits." In support of this statement, Jones posted an AI-generated video that he created of FBI agents tackling and arresting Jacobs (the "AI-Generated Arrest Video"). Jones knows that the AI-Generated Arrest Video is fake, defamatory, and, coupled with his post, portrays Jacobs in an extraordinarily false light.

57. That same day, Jones proceeded to brag that, unlike Jacobs, he does not have to "look over [his] shoulder" and he is able to "sleep like a baby", referring to the fact that he conspired with others to send an attacker to Jacobs' home, thereby causing Jacobs to be in constant

fear for his safety.

58. On August 22, 2025, Jones called Jacobs' direct supervisor at his Arizona employer (having located the supervisor's phone number online), and accused Jacobs of having committed "felony theft." When asked if he was a lawyer, Jones claimed, falsely, to be a "law student." Jones proceeded in the conversation to try to extort Jacobs' supervisor into firing Jacobs by threatening to post negative things about the firm.

59. Approximately two weeks later, Jones texted the same supervisor saying "[h]ow do you interpret your duties under Arizona Rules of Professional Conduct 8.3(a) re: what I told you about Steven the other day? I am assuming that both the facts I told you, *and* Stevens own oral argument transcript, raise a substantial question as to Stevens honesty here, but perhaps one of the exceptions applies? [Let me know]." Upon information and belief, Jones' reference to the oral argument "transcript" refers to the Doctored Video that Jones has deceptively edited and widely disseminated.

60. Finally, between August 22 and August 24, Jones made a number of utterly baseless posts about Jacobs' mother, Linda, a totally uninvolved non-party, claiming she somehow conspired with Plaintiff to commit money laundering. One such posted tagged the State Bar of Arizona. These posts used harassing epithets for Plaintiff and his mother, referring to Plaintiff as "Scammin' Steve Jacobs" and his mother as "Money-Launderin' Linda Jacobs".

61. Upon information and belief, Linda is in the process of engaging counsel to pursue defamation claims against Jones.

62. Since May 27, 2025, Jones has a "pinned" post at the top of his account that includes yet another AI-generated video he created of law enforcement agents pinning Jacobs' picture to a bulletin board (as if Jacobs is a criminal target) (the "AI-Generated Bulletin Board Video"; together with the "AI-Generated Arrest Video", the "AI-Generated Videos")

63. Each of Jones' posts referenced above accusing Jacobs of crimes, and, in particular, claiming that Jacobs *admitted* to committing crimes, as supported by the Doctored Video and other AI-generated videos, is false, defamatory, damaging, and extraordinarily malicious.

64. Jacobs, of course, did not "admit[] to a half-million dollar fraud", to "defrauding

his co-fiduciary for hundreds of thousands of dollars", to being a "scam-artist", or to "stealing ~$400k from [Jones]."

66. Indeed, even putting aside that Jacobs made no such admissions at all, the oral argument referred to by Jones was **on a motion to dismiss**, and therefore the parties were **required by law** to accept Jones' factual allegations as true for the purposes of the motion. Moreover and in any event, the argument centered upon the procurement of a release agreement, not the procurement of any actual money (let alone a "half-million dollars").

66. Jacobs did not steal "~$400k" or any money at all from Jones, let alone admit to such a crime in court.

67. A careful comparison of Jones' Doctored Video with the actual video of the oral argument reveals Jones' extraordinary bad faith and malice.

68. Jones made three extremely significant edits to the video of the oral argument:

a) *First*, crucially, Jones deleted the portion of the video in which, in response to questioning from the court, Jacobs explained and justified making an alleged misstatement to Jones by informing the court that Jones "was working with someone very dangerous" who attacked Plaintiff outside his home. (*See* Exhibit C at 1.) Jones also deleted Jacobs' statement that he reported the incident to the FBI and that there was currently an FBI investigation concerning Jones' attack underway. (*Id.*)

b) *Second*, just as crucially, Jones deleted the court admonishing Jacobs for referring to the violent attack because it was outside the record (which solely consisted of the allegations in Jones' complaint). (*Id.*) This shows that all of Jacobs' statements at this oral argument were constrained to accept the allegations in Jones' complaint, and that Jones sought to mislead viewers (including Jacobs' employer) and ensure they were unaware of that fact.

c) *Third*, when the court asked Jacobs whether Jones' factual allegations about why he signed the release at issue are true, Jones deleted Jacobs' response in which Jacobs said "again he contends that that's why he signed the release, I contend if the matter goes to discovery it would be totally different." (*Id.* at 3.) Jones removed this portion of the video to make it appear that Jacobs is making a factual admission on this motion to dismiss, which is false and totally

1  misleading to any viewer.

2  69.  Jones admitted in a July 17, 2025 X post that he altered the video of the oral argument, but claims the edits were made for "brevity and clarity" and that "[n]one of the edits are misleading." Jones, as the one who made the edits to the Doctored Video, knows better than anyone that this is false. Indeed, his intent in creating and disseminating the Doctored Video (And the AI-Generated Videos) was to portray Plaintiff in the worst possible light.

70.  In any event, in neither the actual oral argument (*see* Exhibit A), or even the Doctored Video (see Exhibit B), does Jacobs admit to stealing ~$400k from [Jones]".

71.  To make matters even worse, Jones sent the Doctored Video to Linda. In that email of February 17, 2025, Jones linked to the Doctored Video, accused Linda (for the first time, but not the last) of engaging in money laundering, and threatened to sue *her* in Pennsylvania.

72.  This email was part of Jones' effort to extort Linda into paying money to his marital community, comprised of himself and Trianna Begum.

73.  Indeed, after sending a number of emails demanding money over the previous few months, on January 8, 2025, Jones sent another email to Linda.

74.  In this January 8, 2025 email, Jones included a bizarre, unwelcome, half-naked picture of himself and Begum, and stated that Plaintiff "scammed *us* [ie Jones and Begum as a marital community] for ~$500k." (Emphasis added).

**C. Jones States Falsely that Jacobs Engaged in Frivolous Litigation Conduct**

75.  Jones also made certain false and malicious statements about Jacobs engaging in frivolous litigation conduct.

76.  On August 2, 2025, Jones posted "Ask yourself why Steven B. Jacobs, who is one of the most angry and frivolously litigious pro-se (plaintiff and defendant)'s ever . . . would not sue me for any of the dozens of tweets I have made . . . ."

77.  On August 3, 2025, Jones posted: Steven B. Jacobs' history of frivolous and losing litigation . . . ."

78.  The claim that Jacobs has a "history" of "frivolous" litigation is totally false. As Jones well knows, no court, agency, or tribunal, anywhere in the world has ever determined that

Jacobs engaged in any frivolous litigation activity whatsoever.

79. The social media posts discussed above and copied into Exhibit D are only a small fraction of Jones' false, malicious, and defamatory posts about Jacobs. To date, Jones has posted about Jacobs over sixty times.

**FIRST CAUSE OF ACTION**

**Defamation *Per Se* – Statements Regarding Admissions to Crimes**

(Against all Defendants)

80. Plaintiff repeats the allegations contained in the preceding paragraphs as though set forth in full herein.

81. Jacobs was and is, at all times, a purely private figure.

82. Jones' false social media posts include, but are not limited to, stating that Jacobs admitted in the January 8, 2025 oral argument to "stealing ~$400k from [him]," and that Jacobs "admit[ed] to a half-million dollar fraud"

83. Jones supported these false and defamatory statements with the Doctored Video, which egregiously misrepresented the oral argument at issue, and the AI-Generated Videos, which Jones created.

84. Jones published and disseminated all of the above-referenced social media posts, the Doctored Video, and the AI-Generated Videos to third parties, including but not limited to his followers on X (including multiple followers who reside in Arizona), as well as to Jacobs' colleagues and co-workers in Arizona, some of whom viewed the posts and the Doctored Video. Jones' publications were not privileged.

85. Jacobs did not admit to stealing ~$400k, or any money, from Jones, in that oral argument (or at any other time).

86. Jones knows that Jacobs did not admit to stealing any money from him.

87. Indeed, Jacobs has never been arrested, charged with, or convicted of any crime whatsoever (as Jones knows)

88. Jones acted with actual malice, knowing his statements were false or, at absolute minimum, recklessly disregarding the truth.

89. Indeed, the Doctored Video that Jones created for the express purpose of misrepresenting the argument before the court is as clear-cut evidence of actual malice as is imaginable.

90. Jones' defamatory statements were disseminated in Arizona, intended to cause harm in Arizona, were viewed by people in Arizona (including more than one of Jacobs' co-workers), and have caused immense harm in Arizona.

91. Jones' false statements constitute defamation *per se*, as they constitute an accusation that Jacobs *admitted* to committing a crime, and they constitute a particularly egregious attack on Jacobs in his profession as a litigator.

92. Damages for defamation *per se* are presumed.

93. Jacobs is also entitled to special damages including reputation harm and emotional distress, in an amount to be proven at trial.

94. At all times relevant to this matter Jones acted in a willful and wanton manner, with the intent to cause harm to Plaintiff, and with an evil mind so as to justify an award of punitive damages against Defendants in an amount sufficient to punish Defendants and to deter Jones and others from engaging in similar conduct in the future.

95. Begum is liable through the Jones-Begum marital community.

## SECOND CAUSE OF ACTION

### Defamation *Per Se* – Statements Regarding Frivolous Litigation

(Against all Defendants)

96. Plaintiff repeats the allegations contained in the preceding paragraphs as though set forth in full herein.

97. Jacobs was and is, at all times, a purely private figure.

98. Jones' false public statements include, but are not limited to, stating that Jacobs has a "history" of "frivolous" litigation.

99. The claim that Jacobs has a "history" of "frivolous" litigation is totally false. As Jones well knows, no court, agency, or tribunal, anywhere in the word has ever determined that Jacobs engaged in any frivolous litigation activity whatsoever.

100. Jones published and disseminated all of the above-referenced social media posts to third parties, including but not limited to his many followers on X (including multiple followers who reside in Arizona), as well as to Jacobs' colleagues and co-workers in Arizona. Jones' publications were not privileged.

101. Jones is legally sophisticated, has commenced multiple lawsuits *pro se*, and regularly reads legal documents (particularly those involving Jacobs). He therefore knows or should know that Jacobs has no history of frivolous litigation activity.

102. Jones acted with actual malice, knowing the statements were false or, at absolute minimum, recklessly disregarding the truth.

103. Jones defamatory statements were disseminated in Arizona, intended to cause harm in Arizona, were viewed by people in Arizona (including more than one of Jacobs' co-workers), and have caused immense harm in Arizona.

104. Jones' false statements constitute defamation *per se* as they constitute an attack on Jacobs in his profession as a litigator.

105. Damages for defamation *per se* are presumed.

106. Jacobs is also entitled to special damages including reputation harm and emotional distress, in an amount to be proven at trial.

107. At all times relevant to this matter Jones acted in a willful and wanton manner, with the intent to cause harm to Plaintiff, and with an evil mind so as to justify an award of punitive damages against Defendants in an amount sufficient to punish Defendants and to deter Jones and others from engaging in similar conduct in the future.

108. Begum is liable through the Jones-Begum marital community

### THIRD CAUSE OF ACTION

### False Light Invasion of Privacy

(Against all Defendants)

109. Plaintiff repeats the allegations contained in the preceding paragraphs as though set forth in full herein.

110. Defendants gave publicity to the aforementioned matters concerning Plaintiff

before the public in a false light, including, *inter alia*, by creating and disseminating the Doctored Video, and by falsely stating and implying that Plaintiff admitted to committing a crime before the court.

111. Jones also posted and disseminate the AI-Generated Videos which falsely showed Jacobs' photo being pinned to a law enforcement bulletin board, and being arrested by the FBI.

112. The false light in which Plaintiff was placed would be highly offensive to a reasonable person.

113. Jones had knowledge of the falsity of the publicized matters and the false light in which Plaintiff would be placed.

114. Plaintiff has been damaged by the aforementioned in an amount to be proven at trial.

115. At all times relevant to this matter Jones acted in a willful and wanton manner, with the intent to cause harm to Plaintiff, and with an evil mind so as to justify an award of punitive damages against Defendants in an amount sufficient to punish Defendants and to deter Jones and others from engaging in similar conduct in the future.

116. Begum is liable through the Jones-Begum marital community.

**FOURTH CAUSE OF ACTION**

**Tortious Interference with Contract**

(Against all Defendants)

117. Plaintiff repeats the allegations contained in the preceding paragraphs as though set forth in full herein.

118. At all relevant times, Plaintiff had a contractual relationship with his employer, Hartley Law PLLC, and was supervised by Matt Hartley.'

119. On or around August 22, 2025, Jones became aware of Plaintiff's employment with Hartley Law PLLC. On that day he (i) posted Plaintiff's business address online; (ii) posted that Plaintiff's days at Hartley Law "are numbered"; and (iii) called Matt Hartley under the guise of being a "law student" and falsely reported that Jacobs had committed felony theft (which Jones supported by referencing the Doctored Video.

120. On September 4, 2025, Jones followed up this call by texting Matt Hartley "[h]ow do you interpret your duties under Arizona Rules of Professional Conduct 8.3(a) re: what I told you about Steven the other day? I am assuming that both the facts I told you, *and* Stevens own oral argument transcript, raise a substantial question as to Stevens honesty here, but perhaps one of the exceptions applies? [Let me know]."

121. Jones' correspondence has damaged Jacobs' reputation while harassing his employer, severely damaging his prospects for employment.

122. As a direct result of Jones' tortious interference, Jacobs has sustained damages in an amount to be proven at trial.

123. At all relevant times Jones' conduct was entirely improper. As set forth in detail above, at all relevant times Jones has acted (i) deceptively and under false pretenses, (ii) with malice, (iii) with a motive to destroy Plaintiff's life and career[3]; (iv) with a motive to endlessly harass Plaintiff; (v) and without any legitimate purpose whatsoever.

124. At all times relevant to this matter Jones acted in a willful and wanton manner, with the intent to cause harm to Plaintiff, and with an evil mind so as to justify an award of punitive damages against Defendants in an amount sufficient to punish Defendants and to deter Jones and others from engaging in similar conduct in the future.

125. Begum is liable through the Jones-Begum marital community.

//
//
//
//
//

---

[3] Indeed, on August 22, 2025, Jones posted on X that "every year" Plaintiff does make his salary at his former employer "is a win for humanity."

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment in his favor and against Defendants as follows:

a) Presumed damages of no less than $500,000;

b) Compensatory and Special damages in an amount to be proven at trial, but no less than $500,000;

c) Exemplary and punitive damages in an amount sufficient to punish Defendants for engaging in the conduct described herein and to deter Defendants and others from engaging in similar conduct in the future, in an amount to be determined at trial;

d) Pre- and post-judgment interest;

e) Reasonable attorneys' fees, costs, and disbursements;

f) Such other and further relief in Plaintiff's favor as this Court deems necessary, just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demand trial by jury in this action of all issues so triable.

**DATED:** September 17, 2025

DRE, A.P.C.

By: _____
**DARREN RICHIE, ESQ.**
Attorney for Plaintiff, STEVEN JACOB