**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Steven B Jacobs, | No. CV-25-03428-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Oscar B Jones, et al., | |
| Defendants. | |

The Court now considers: Defendant Oscar Jones' Motion to Dismiss (Doc. 20); Defendant Jones' Motion to Dismiss Under A.R.S. § 12-751 ("Anti-SLAPP Motion") (Doc. 22); Defendant Trianna Begum's Motion to Dismiss (Doc. 28); and Defendant Begum's Motion to Set Aside Clerk's Entry of Default (Doc. 30).

**I.    BACKGROUND**

The Complaint alleges as follows.  Underlying this case is a dispute between Plaintiff and Defendant Jones over a purported unpaid gambling debt.  (Doc. 1 at 1.) Defendant Jones filed three separate lawsuits against Plaintiff in New York to recover said debt.  (*Id.* at 4–5.)  Two of the lawsuits were voluntarily dismissed.  (*Id.* at 5.)  This case arises out of allegedly "false and malicious statements" Defendant Jones made about Plaintiff in relation to the New York lawsuits.  (*Id.*)  Plaintiff categorizes the statements as follows: "(i) statements that Plaintiff committed theft or fraud, or otherwise stole money from Jones and admitted to such theft in a recorded oral argument; and (ii) statements that Plaintiff has engaged in frivolous litigation activities."  (*Id.*)

Many of the statements arise out of, or relate to, an oral argument from the New York lawsuits. (*Id.* at 6.) The Complaint refers to a video posted on YouTube of the oral argument; the video was "deceptively edited" by Defendant Jones to misconstrue Plaintiff's representations at the oral argument. (*Id.*) Defendant Jones then posted the following messages online:

- "@FBI @JusticeOIG @SDNYnews #ArrestStevenJacobsNow; please take 5 minutes out of your day to watch what 5 NY appeals court judges had to say about this @NYSBA-licensed attorney openly admitting to a half-million fraud." (*Id.* at 7.)
- "Hey @Socrates1848652 do you have any personal knowledge about this #LegalFraud @NYSBA-licensed attorney-criminal Steven Jacobs that you can share with our fine friends in blue @FBI @JusticeOIG @SDNYnews @NYPDnews @NYPDDetectives #GrandLarcenyDivision??" (*Id.*)
- Defendant Jones posted the following with a link to the video: "In which Steven . . . Jacobs admits to defrauding his co-fiduciary for hundreds of thousands of dollars." (*Id.* (alteration in original))
- "Same reason Steven B. Jacobs . . . is still licensed to practice law in New York (cc: @NYSBA) despite admitting in court to stealing ~$400k from me in a fraud scheme." (*Id.*(alteration in original).)
- "[T]ruth is an Absolute Defense to Defamation" when asked by a follower whether he checked on the "laws surrounding defamation per se." (*Id.*)
- "[S]o grateful that I live in America, where we have strong legal protections re: publishing facts . . . such as the Fact that @StevenBJacobs (Steven Jacobs, middle name Benjamin . . . ) is a CRIMINAL FRAUD who COMMITED [sic] FELONY THEFT." (*Id.* at 7–8 (second and third alterations in original).)
- "[T]he criminal fraud named Steven Benjamin Jacobs who not only committed fraud, but also admitted it [in] front of the New York State Appellate Division 1st Department during oral argument." (*Id.* at 8 (second alteration in original).)
- "Scammin' Steven Jacobs . . . ADMITTED in OPEN COURT to being a scam-artist A.K.A. lying to a fiduciary, yet is inexplicably still licensed by the @NYSBA to practice law." (*Id.*)
- "Steven Jacobs . . . would rather succeed by fraud than do anything with honor. He would steal a nickel from his grandma if he thought she wouldn't find out. Fortunately for society and justice writ large, he is finally failing badly [because] of his many frauds." (*Id.* (alterations in original).)
- "'Steven B Jacobs . . . is definitely in 'Catch me if you can' mode. His

- 2 -

days as a practicing attorney at [Jacobs' employer] are certainly numbered; probably in the low single digits." (*Id.* (alterations in original).) This post also included an AI-generated video of FBI agents tackling Plaintiff and arresting him. (*Id.*)

Defendant Jones then called Plaintiff's supervisor, accusing Plaintiff of having committed "felony theft." (*Id.* at 9.) Plaintiff is an attorney and Defendant Jones later messaged the supervisor:

"[H]ow do you interpret your duties under Arizona Rules of Professional Conduct 8.3(a) re: what I told you about Steven the other day? I am assuming that both the facts I told you, *and* Stevens own oral argument transcript, raise a substantial question as to Stevens honesty here, but perhaps one of the exceptions applies? [Let me know]."

(*Id.* (second alteration in original).) Defendant Jones continued posting similar content on social media and other AI-generated videos portraying Plaintiff as a criminal. (*Id.*) Defendant Jones also sent an email to Plaintiff's mother which "included a bizarre, unwelcome, half-naked picture of himself and" his wife, Defendant Begum, that "stated that Plaintiff 'scammed us [ie Jones and Begum as a marital community] for ~$500k.'" (*Id.* at 11 (alterations in original).) Plaintiff also alleges that Defendant Jones "made certain false and malicious statements about Jacobs engaging in frivolous litigation conduct." (*Id.*) Plaintiff thus asserts two claims of defamation per se, false light invasions of privacy, and tortious interference with contract. (Doc. 1 at 12–15.)

## II.    LEGAL STANDARD

To survive a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This notice exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id.*

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility . . . .'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pleaded factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

### III. DISCUSSION

The Court begins by considering Defendant Jones' Motion to Dismiss, beginning with Plaintiff's defamation claims.

### A. Defamation Per Se Claims

"To establish defamation under Arizona common law, a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach

plaintiff's honesty, integrity, virtue, or reputation." *Rogers v. Mroz*, 502 P.3d 986, 988 (Ariz. 2022) (citation modified). "Substantial truth is an absolute defense against defamation claims." *Ruggeroli v. Residential Real Est. Council*, No. CV-23-00259-TUC-JAS, 2024 WL 4203156, at *6 (D. Ariz. Sept. 16, 2024). "Defamation *per se* includes statements that are facially defamatory without the need for 'extrinsic matter' or facts to understand the statements are defamatory . . . ." *Id.* "In defamation *per se* claims, the plaintiff does not need to plead to special damages because the damages are assumed." *Id.* at *7. "To survive a motion to dismiss, a plaintiff must show that the alleged statements are reasonably capable of sustaining a defamatory meaning and are not mere comment within the ambit of the First Amendment." *Hernandez v. Scottsdale Hotel Grp. LLC*, No. CV-20-00349-PHX-DWL, 2020 WL 6827745, at *2 (D. Ariz. Nov. 20, 2020) (citation modified). "Only statements which may be reasonably interpreted as factual assertions, not simply statements of opinion, are actionable as defamation." *Id.* (citation modified).

Taking the Complaint as true, and construing it in the light most favorable to Plaintiff, the Court finds that Plaintiff has stated a plausible claim of defamation *per se*—at least in part. Again, Defendant Jones posted the following on social media: that Plaintiff "openly admit[ed] to a half-million fraud"; that Plaintiff "admits to defrauding his co-fiduciary for hundreds of thousands of dollars"; that Plaintiff "admitt[ed] in court to stealing ~$400k from me in a fraud scheme"; accused Plaintiff of being "a CRIMINAL FRAUD who COMMITED [sic] FELONY THEFT"; and otherwise accused Plaintiff of bring a criminal who committed criminal fraud. (Doc. 1 at 7–8.) Plaintiff also alleges that Defendant Jones contacted Plaintiff's supervisor and accused Plaintiff of having committed felony theft.[1]  (*Id.* at 9.)  These statements "are reasonably capable of sustaining a defamatory meaning." *Hernandez*, 2020 WL 6827745, at *2. Simply put, Defendant Jones

---

[1]  Defendant Jones' contends that the Court cannot consider this assertion because it is unsupported, conclusory, and "made without any factual basis or evidence." (Doc. 20 at 6.) Defendant Jones misunderstands both the pleading and Rule 12(b)(6) standard.  This statement is not an impermissible legal conclusion, it is a specific factual assertion. Additionally, Plaintiff is not required to supplement his Complaint with extrinsic evidence at this juncture.

openly accused Plaintiff of committing a crime.  Arizona courts recognize that "defamation per se includes the communication or publication of statements that another has committed a crime or a criminal act."[2]  *Sebring v. Pamintuan*, No. 1 CA-CV 07-0478, 2008 WL 2497446, at *2 (Ariz. Ct. App. June 17, 2008).

Defendant Jones disagrees, and contends that these statements "appeared on social media platforms, forums where sharp language, emotional commentary, and exaggerated phrasing are commonplace and understood as such by reasonable readers." (Doc. 20 at 11.) Defendant Jones goes on to note that on social media, "no reasonable reader would interpret the challenged statements as literal factual assertions rather than commentary about a legal dispute already playing out." (*Id.*)  The Court cannot conclude, as a matter of law, that Defendant Jones' statements are mere hyperbole.  For example, Defendant Jones' posted that he is "grateful" to live in America, where he has "strong legal protection re: *publishing facts . . .* such as *the Fact* that [Plaintiff] is a CRIMINAL FRAUD who COMMITED [sic] FELONY THEFT." (Doc. 1 at 7–8 (emphasis added); Doc. 1–1 at 13.)  This post is not mere "emotional commentary"; Defendant Jones plainly made a factual assertion that Plaintiff committed crime.

The Court will not evaluate each of the alleged defamatory statements.  Plaintiff's Complaint sufficiently alleges a defamation per se claim in reference to Defendant Jones' statements on fraud and theft.  The Court recognizes that Plaintiff also brings a second defamation claim predicated on statements made by Defendant Jones relating to Plaintiff's purported history of frivolous litigation.  Defendant Jones, however, does not specifically challenge this claim so the Court does not address it.

### B. False Light Invasion of Privacy Claim

The Court now addresses Plaintiff's claim of false light invasion of privacy.  "To establish a claim for false light invasion of privacy, a plaintiff must show (1) the defendant, with knowledge of falsity or reckless disregard for the truth, gave publicity to information placing the plaintiff in a false light, and (2) the false light in which the plaintiff was placed

---

[2]  The quoted language comes from a trial court's jury instruction which was affirmed on appeal.  *See Sebring*, 2008 WL 2497446, at*6.

would be highly offensive to a reasonable person in the plaintiff's position." *Desert Palm Surgical Grp., P.L.C. v. Petta*, 343 P.3d 438, 450 (Ariz. Ct. App. 2015). This is "a tort separate from defamation" although the distinction between the two is "subtle." *Id.* at 449–50. "Although a cause of action for false light invasion of privacy may arise when someone publishes something untrue about a person, in some instances, even a true statement may form the basis for false light liability if it creates a false implication about the person." *Id.* at 450.

For many of the reasons previously stated, Plaintiff plausibly alleges a false light claim. Again, Defendant Jones is alleged to have repeatedly accused Plaintiff of being a criminal who committed fraud and theft. Defendant Jones disagrees, contending that "[n]othing in the Complaint suggests that Mr. Jones posted anything he believed to be untrue or that he entertained serious doubt about the accuracy of the material he referenced." (Doc. 20 at 12.) Defendant Jones goes on to note that "the statements forming the backbone of Plaintiff's false-light theory all trace back to sources that are either public, drawn directly from the New York Case, or rooted in Mr. Jones' protected opinion based on firsthand dealings with Plaintiff." (*Id.*) While this argument may be true regarding *some* of the statements Plaintiff mentions in the Complaint, it certainly does not apply to Defendant Jones' repeated assertions that Plaintiff is a criminal guilty of fraud and theft. Even if Defendant Jones' believed that Plaintiff was guilty of these crimes, Plaintiff has not been convicted; Defendant Jones recklessly disregards this truth by espousing otherwise.

Defendant Jones goes on to note that the second element of false light is not established here because "the Complaint does not address how an average person, knowing there is an ongoing fraud dispute, would consider these comments to be outside acceptable expression." (*Id.* at 13.) This argument lacks merit. Although there might be an ongoing fraud dispute in *civil* court, this does not give Defendant Jones license to repeatedly assert that Plaintiff is a criminal. Additionally, Defendant Jones calling Plaintiff's supervisor and accusing Plaintiff of felony theft clearly meets the elements of false light and is not, as a

matter of law, "acceptable expression."

### C. Tortious Interference with Contract Claim

Finally, the Court addresses Plaintiff's claim of tortious interference with contract. "Tort liability may be imposed upon a defendant who intentionally and improperly interferes with the plaintiff's rights under a contract with another if the interference causes the plaintiff to lose a right under the contract." *ABCDW LLC v. Banning*, 388 P.3d 821, 830–831 (Ariz. Ct. App. 2016) (citation modified). "A prima facie case of intentional interference with contract requires alleging the following: (1) the existence of a valid contractual relationship; (2) knowledge of the relationship on the part of the interferor; (3) intentional interference inducing or causing a breach; (4) resultant damage to the party whose relationship has been disrupted; and (5) that the defendant acted improperly." *Id.* at 831 (citation modified).

Plaintiff's tortious interference claim is predicated on Defendant Jones' contact with Plaintiff's supervisor. (Doc. 1 at 15–16.) However, Plaintiff fails to allege any facts establishing the third or fourth elements of his claim. In short, Plaintiff does not allege that his employment relationship was affected by Defendant Jones' conduct. Plaintiff merely alleges that his reputation and prospects of employment were damaged. (Doc. 1 at 16.) However, neither of these damages, by themselves, affect his contractual relationship with his employer. Accordingly, the Court dismisses Plaintiff tortious interference with contract claim without prejudice.

### D. Anti-SLAPP Motion (A.R.S. 12-751)

The Court now consider Defendant Jones' Anti-SLAPP Motion. Defendant Jones filed the Motion pursuant to A.R.S. § 12-751—Arizona's anti-SLAPP statute. A lengthy discussion of this Motion is unnecessary because it functionally duplicates Defendant's Motion to Dismiss.

"The Ninth Circuit employs a two-step process to evaluate anti-SLAPP motions." *Avid Telecom LLC v. Frankel*, No. CV-22-00558-TUC-JCH, 2023 WL 5056949, at *2 (D. Ariz. May 26, 2023). "First, the court determines whether the actions at issue involve an

exercise of protected rights." *Id.* "Second, the court analyzes whether the anti-SLAPP motion raises a legal or a factual challenge." *Id.* Defendant Jones' Motion raises a legal challenge. (Doc. 22 at 9.) "When the anti-SLAPP motion challenges the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Frankel*, 2023 WL 5056949, at *2 (citation modified).

The Court has evaluated the Complaint under Rule 12(b)(6). That same analysis applies to Defendant's Anti-SLAPP Motion.

### E. Defendant Begum

The Court now considers Defendant Begum's motions.

#### 1. *Motion to Set Aside Clerk's Entry of Default*

The Court begins with Defendant Begum's Motion to Set Aside Clerk's Entry of Default. Plaintiff previously moved for entry of default against Defendant Begum based on her failure to file a responsive pleading. (Doc. 26 at 2.) The Clerk entered default against Defendant Begum. (Doc. 29). Defendant Begum now moves to set aside default.

"The court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). "To determine 'good cause,' a court must 'consider three factors: (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice' the other party." *Meridian PO Fin. LLC v. OTR Tire Grp. Inc.*, 507 F. Supp. 3d 1148, 1160 (D. Ariz. 2020) (citation modified) (quoting *United states v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010)). "[T]he court's discretion under Rule 55(c) is 'especially broad,' and any doubt should be resolved 'in favor of setting aside the entry of default and deciding the case on its merits.'" *Payne v. Shalash Sales LLC*, No. CV-25-01261-PHX-SPL, 2026 WL 1251640, at *1 (D. Ariz. May 7, 2026) (quoting *O'Connor v. Nevada*, 27 F.3d 357, 364 (9th Cir. 1994)). "Judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Id.* (citation modified) (quoting *Falk v.*

*Allen*, 739 F.2d 461, 463 (9th Cir. 1984)).

Here, the Court will set aside default judgment because doing so would not prejudice Plaintiff. "To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *Id.* (quoting *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001)). "A plaintiff is prejudiced if his ability to pursue his claim has been hindered due to delay resulting in such tangible harms as the loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *Id.* (citation modified). Here, Plaintiff claims he would be prejudiced because "Every day that this litigation is stalled by Begum's procedural gamesmanship is another day where the Defendants can dissipate the community assets that are the subject of the suit." (Doc. 32 at 13.) This argument fails for multiple reasons. First, Plaintiff's concern is speculative. Second, as discussed below, Plaintiff only sues Defendant Begum to collect any judgment from the marital community. Thus, recovery ultimately depends on Plaintiff's claims against Defendant Jones. Moreover, as discussed below, the Court denies Defendant Begum's Motion to Dismiss, so Plaintiff can still collect any judgment from community assets. Because Plaintiff will suffer no prejudice, the Court sets aside the entry of default.

### 2. Motion to Dismiss

The Court now considers Defendant Begum's Motion to Dismiss. Defendant Begum seeks dismissal because there are "no factual allegations that [she] made any statement, published any content, contacted any third party, interfered with any contract, or participated in any conduct giving rise to Plaintiff's claims." (Doc. 28 at 2.) Plaintiff contends that Defendant Begum is a proper party pursuant to A.R.S. § 25-215(D). (Doc. 32 at 14.) Under that statute, "a party seeking damages from community assets for an unpaid debt or breach of an obligation must join both spouses when asserting a cause of action." *Lattin v. Shamrock Materials, LLC,* 503 P.3d 116, 119 (Ariz. 2022) (citing A.R.S. § 25-215(D)). In reply, Defendant Begum does not offer any reason why her joinder on this basis is improper. The Court agrees that the Complaint is bereft of any allegation that

Defendant Begum is personally liable for any of the complained of conduct.  However, it is permissible for Plaintiff to name Defendant Begum solely for purposes of collecting any potential judgment from the marital community.  *See Greenburg v. Wray*, No. CV-22-00122-PHX-DLR, 2022 WL 2176499, at *3 (D. Ariz. June 16, 2022). Accordingly, the Court denies Defendant Begum's Motion to Dismiss.

### IV.     CONCLUSIONS

Accordingly,

**IT IS ORDERED granting in part and denying in part** Defendant Jones' Motion to Dismiss (Doc. 20) and Anti-SLAPP Motion (Doc. 22).

**IT IS FURTHER ORDERED denying** Defendant Begum's Motion to Dismiss (Doc. 28).

**IT IS FURTHER ORDERED granting** Defendant Begum's Motion to Set Aside Clerk's Entry of Default (Doc. 30).  The Clerk's Entry of Default (Doc. 29) is **vacated**.

**IT IS FURTHER ORDERED granting** Plaintiff leave to amend his tortious interference with contract claim only.  If Plaintiff so chooses, she must file an Amended Complaint no later than thirty (30) days after the date this Order is issued.

Dated this 18th day of June, 2026.

Honorable Susan M. Brnovich
United States District Judge